**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 09-4336

DEANGELO SYLVESTER RIVERS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, Chief District Judge.
(2:07-cr-00304-DCN-1)

Argued: December 2, 2009

Decided: February 25, 2010

Before WILKINSON, GREGORY, and DUNCAN,
Circuit Judges.

Vacated and remanded by published opinion. Judge Gregory
wrote the opinion, in which Judge Wilkinson and Judge Duncan joined.

## COUNSEL

**ARGUED**: Mary Gordon Baker, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, South Carolina, for Appellant. Robert Frank Daley, Jr., OFFICE OF THE

UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF:** W. Walter Wilkins, United States Attorney, Columbia, South Carolina, Eric J. Klumb, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

---

## OPINION

GREGORY, Circuit Judge:

The Armed Career Criminal Act ("ACCA") imposes a fifteen-year mandatory minimum sentence on felons convicted of firearm possession where the felon has "three previous convictions . . . for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). Today, we again consider whether a conviction under South Carolina law for failure to stop for a blue light, S.C. Code Ann. § 56-5-750(A), constitutes a "violent felony" under the ACCA. In *United States v. Roseboro*, 551 F.3d 226, 240 (4th Cir. 2009), we held that only under some circumstances does a failure to stop for a blue light qualify as a predicate offense under the ACCA. Based on the Supreme Court's subsequent decision in *Chambers v. United States*, __ U.S. __, 129 S. Ct. 687 (2009), we hold that under no circumstance is a violation of South Carolina's blue light statute a violent felony under the ACCA.

I.

The facts of this case are not in dispute. On August 13, 2007, petitioner, Deangelo Sylvester Rivers ("Rivers"), pled guilty to being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e). In preparation for sentencing, a probation officer filed a presentence investigation report, concluding that Rivers' prior convictions for burglary in the third degree, failure to stop for a blue light, and possession of cocaine with the intent

to distribute qualified him for enhanced sentencing under the U.S. Sentencing Guidelines Manual ("USSG") § 4B1.4 and the ACCA.[1] Rivers argued that his South Carolina convictions for burglary in the third degree and failure to stop for a blue light were not violent felonies for purposes of the ACCA. The district court upheld the use of both convictions as qualifying offenses for purposes of ACCA enhancement, sentencing Rivers to 188-months imprisonment and five years supervised release.

On appeal, this Court upheld the finding that his burglary conviction was a violent felony, but vacated the district court's judgment with respect to the blue light conviction, having determined "it is unclear from the record in this appeal whether Rivers' 2001 conviction for failure to stop for a blue light involved intentional conduct." *United States v. Rivers*, 310 F. App'x 618, 620 (4th Cir. 2009). We remanded the case for further proceedings in accordance with our opinion in *Roseboro* to determine whether or not the blue light violation was intentional. On remand, the district court found it was intentional and sentenced Rivers to 188-months imprisonment. Rivers filed a timely appeal.

## II.

In reviewing a lower court's determination that a defendant is an armed career criminal as defined by the ACCA, we review factual findings for clear error and legal conclusions de novo. *United States v. Wardick*, 350 F.3d 446, 451 (4th Cir. 2003) (citing *United States v. Brandon*, 247 F.3d 186, 188 (4th Cir. 2001)). Because this is the third time in seven

---

[1]"Because the language defining a violent felony in § 924(e) is nearly identical to and materially indistinguishable from the language defining a crime of violence in USSG § 4B1.2," this Court relies on "case law interpreting both sections when examining whether a prior crime" is a "crime of violence" or a violent felony under the ACCA. *Roseboro*, 551 F.3d at 229 n.2 (citing *United States v. Johnson*, 246 F.3d 330, 333 n.5 (4th Cir. 2001)).

years that this Court has considered the question of whether a violation of South Carolina's blue light statute constitutes a violent felony, we review the history of our analysis in light of further developments in Supreme Court precedent.

Federal law bars previously convicted felons from possessing a firearm. 18 U.S.C. § 922(g)(1). Ordinarily, felons in possession receive a prison term of up to ten years. § 924(a)(2). The ACCA imposes a more stringent fifteen-year mandatory-minimum term of imprisonment on defendants who have three prior convictions for "a violent felony or a serious drug offense." § 924(e)(1). The ACCA defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

§ 924(e)(2)(B). The South Carolina blue light statute reads in relevant part:

> In the absence of mitigating circumstances, it is unlawful for a motor vehicle driver, while driving on a road, street, or highway of the State, to fail to stop when signaled by a law enforcement vehicle by means of a siren or flashing light. An attempt to increase the speed of a vehicle or in other manner avoid the pursuing law enforcement vehicle when signaled by a siren or flashing light is prima facie evidence of a violation of this section. Failure to see the flashing light or hear the siren does not excuse a failure to stop when the distance between the vehi-

cles and other road conditions are such that it would
be reasonable for a driver to hear or see the signals
from the law enforcement vehicle.

S.C. Code Ann. § 56-5-705(A).

This statute was last addressed by the Court in *Roseboro*,
where we held that only a conviction predicated on intention-
ally failing to stop when signaled qualifies as a predicate
offense under the ACCA. 551 F.3d at 240. In so holding, we
found the Supreme Court's decision in *Begay v. United
States*, __ U.S. __, 128 S. Ct. 1581 (2008) overruled our prior
holding in *United States v. James*, 337 F.3d 387 (4th Cir.
2003).

In *Begay*, the Supreme Court held that violating New Mexi-
co's law proscribing driving under the influence ("DUI") did
not qualify as a predicate offense under the ACCA. 128 S. Ct.
at 1588. To determine whether or not the New Mexico statute
qualified, the Court applied a categorical approach. "In deter-
mining whether this crime is a violent felony, we consider the
offense generically, that is to say, we examine it in terms of
how the law defines the offense and not in terms of how an
individual offender might have committed it on a particular
occasion." *Id.* at 1584. In analyzing the statute categorically,
the Court emphasized that although a "'DUI involves conduct
that presents a serious potential risk of physical injury to
another' under § 924(e)(2)(B)(ii) . . . the offense was 'simply
too unlike the provision's listed examples for us to believe
that Congress intended the provision to cover it.'" *Roseboro*,
551 F.3d at 231 (quoting *Begay*, 128 S. Ct. at 1584 (internal
quotation marks omitted)). The Court went on to hold that the
example crimes enumerated in the ACCA—burglary, arson,
extortion, or crimes involving the use of explosives—should
be read as limiting the types of crimes covered by the statute
to those which are "roughly similar in kind as well as in
degree of risk posed, to the examples themselves." *Begay*, 128
S. Ct. at 1585 (citations omitted). The enumerated crimes

were further characterized to "typically involve purposeful, 'violent,' and 'aggressive' conduct." *Id.* at 1586 (citations omitted).

Applying the distinction drawn in *Begay*, between the purposeful behavior required by § 924(e)(2)(B)(ii), and the unintentional conduct captured by New Mexico's DUI statute, the *Roseboro* panel turned to South Carolina's statute. A successful prosecution of the South Carolina blue light statute must prove the following elements:

> (1) that the defendant was driving a motor vehicle; (2) that he was driving it on a road, street or highway of this State; (3) that he was signaled to stop by a law-enforcement vehicle by means of a siren or flashing light; and (4) that he did not stop.

*Roseboro*, 551 F.3d at 233. In finding that the statute did not have a criminal intent element, the Court applied a modified categorical approach to establish the intentionality *Begay* held was necessary to bring a crime within the ambit of the ACCA. *Id.* at 235 ("The absence of either a willful or knowing requirement strongly suggests that the South Carolina legislature intended a violation to rest in the event that the defendant acted either recklessly or negligently." (citations omitted)).

A sentencing court may use the modified categorical approach when "the statutory provision at issue *defines multiple crimes*," and may consult additional materials, beyond the fact of conviction to determine the crime at issue. *Id.* at 230 (citing *Taylor v. United States*, 495 U.S. 575, 599 (1990)) (emphasis added). In justifying application of the modified approach to South Carolina's statute, the *Roseboro* panel observed that it was "categorically overbroad . . . allowing conviction for both intentional and unintentional conduct." *Id.* at 240. The Court then divided the conduct prohibited by the blue light statute into two categories: intentional and unintentional behavior. In light of this division, the panel held that a

sentencing court, after consulting the appropriate documents[2] to identify the type of conduct underlying the conviction, could apply the ACCA's enhancement provision to intentional violations of South Carolina's statute.

### III.

We now have the benefit of the Supreme Court's decision in *Chambers*, which was published eight days after *Roseboro* was decided. *Chambers* counsels that the approach taken by *Roseboro* is no longer good law as applied to the South Carolina blue light statute.

### A.

The Supreme Court made clear in *Chambers* that courts must apply the categorical approach to determine whether a conviction is ACCA eligible. Varying from that approach is only appropriate where different types of behavior satisfy an element of the offense and the proscribed behaviors constitute at least two separate crimes for ACCA purposes. *See Chambers*, 129 S. Ct. 690.

The question before the Court in *Chambers* was whether violation of an Illinois escape statute criminalizing, among other things, failure to report to a penal institution, qualified as a violent felony for purposes of the ACCA. As part of its statutory analysis, the Supreme Court explained that the generic, categorical approach to assessing whether a particular crime is eligible under the ACCA is preferred to the more searching inquiry necessary under the modified categorical approach. *Id.* The methodology of *Chambers* clarifies when a court may vary from the categorical approach and apply the analysis supplied by *Taylor* and *Shepard*. The modified cate-

---

[2]*See Shepard v. United States*, 544 U.S. 14, 16-17 (2005) (holding that police reports and complaint applications could not be consulted in applying the modified approach).

gorical approach was intended "only for 'a narrow range of cases,'" *Shepard v. United States*, 544 U.S. 14, 17 (2005) (quoting *Taylor*, 495 U.S. at 602), as it calls for the sentencing court to look beyond "the fact that the defendant had been convicted of crimes falling within certain categories," *Taylor*, 495 U.S. at 600. However in *Chambers*, the Court observed that in cases where the "behavior underlying, say, breaking into a building differs so significantly from the behavior underlying, say, breaking into a vehicle, that for ACCA purposes a sentencing court must treat the two as different crimes." 129 S. Ct. at 690 (citing *Shepard*, 544 U.S. at 16-17). Thus, only when a statute prohibits different types of behavior such that it can be construed to enumerate separate crimes can a court modify the categorical approach to determine ACCA eligibility.

In its analysis of the Illinois statute, the Court therefore had to determine "whether for ACCA purposes a failure to report counts as a *separate crime*" where the statute criminalizes the following conduct:

> (1) escape from a penal institution, (2) escape from the custody of an employee of a penal institution, (3) failing to report to a penal institution, (4) failing to report for periodic imprisonment, (5) failing to return from furlough, (6) failing to return from work and day release, and (7) failing to abide by the terms of home confinement.

*Id.* at 691 (citing Ill. Comp. Stat., chp. 720, § 5/31-6(a)) (emphasis added). Because the Illinois statute "places in a single numbered statutory section several different kinds of behavior," it describes "at least two separate crimes, namely escape from custody on the one hand, and failure to report on the other." *Id.*

After finding that the Illinois escape statute did in fact describe two separate crimes, the Court analyzed the "failure

to report" provisions independent of the provisions criminalizing escape from custody to determine whether failure to report is a violent felony under the ACCA. This division was important because the purpose of the ACCA is to "focus on the special danger created when a particular type of offender—a violent criminal or drug trafficker—possesses a gun." *Begay*, 128 S. Ct. at 1587 (citing *Taylor*, 495 U.S. at 587-88). It was clear that the Court analyzed the Illinois statute as criminalizing "different kinds of behavior," *Chambers*, 129 S. Ct. at 691, and found failure to report "does not 'involve conduct that presents a serious potential risk of physical injury to another,'" *id.* at 691-92 (quoting *Begay*, 128 S. Ct. at 1583-85).

The Court then applied the analysis required by *Begay* and observed that failure to report "would seem less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody," and held that it did not qualify as a predicate offense under the ACCA. *Id.* at 691.

Thus, after *Chambers*, the modified categorical approach most naturally applies to statutes which proscribe different types of behavior constituting separate crimes for purposes of the ACCA.

### B.

We now turn to the case at hand to determine whether or not the *Roseboro* panel's application of the modified categorical approach to South Carolina's blue light statute survives the Supreme Court's holding in *Chambers*. Rivers argues that the *Roseboro* panel erred in dividing South Carolina's blue light law into separate criminal offenses for the purposes of enhancement. According to the petitioner, the statute only contains one category of crime and therefore cannot be analyzed under the modified categorical approach. We agree.

The *Roseboro* panel did not have the guidance of *Chambers* to determine whether or not it was appropriate to divide the South Carolina statute into two categories of conduct based on intent.[3] The panel pointed to *Taylor* and *Shepard* in choosing to employ the modified categorical approach. *Roseboro*, 551 F.3d at 229 n.3. Yet neither *Taylor* nor *Shepard* provide guidance as to when a statute is susceptible to being divided into different categories of crimes.[4] *Chambers*, however, does.

After *Chambers*, a statute which imposes strict liability for certain conduct does not describe "several different kinds of behavior" such that it would constitute a "separate crime" for purposes of applying the modified categorical approach. *See Chambers*, 129 S. Ct. at 691. Here, South Carolina's statute proscribes one type of behavior: failing to stop for a blue light. "Failure to see the flashing light or hear the siren does not excuse a failure to stop when the distance between the two vehicles and other road conditions are such that it would be reasonable for a driver to hear or see the signals from the law enforcement vehicle." S.C. Code Ann. § 56-5-750(A). There is no varied behavior underlying the elements of a blue light offense. We therefore cannot apply the modified approach to

---

[3]As the panel in *Roseboro* acknowledged, "[A] panel of this court cannot overrule, explicitly or implicitly, the precedent set by a prior panel of this court. Only the Supreme Court or this court sitting en banc can do that." *Roseboro* at 234 (citing *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 271 n. 2 (4th Cir. 2002) (citation and internal quotation marks omitted)).

[4]Instead, both cases deal with burglary statutes that criminalize a broad range of *intentional* conduct, some of which does not impose the same type of risk contemplated by the ACCA. The Court found in cases where statutes define burglary more broadly, "e.g. by eliminating the requirement that the entry be unlawful, or by including places, such as automobiles and vending machines other than buildings," those types of convictions are not sufficiently serious for purposes of the ACCA. *Taylor*, 495 U.S. at 599. A burglary statute which criminalizes knowing and intentional behavior, stands in stark contrast to the South Carolina blue light statute, which covers unintentional acts.

this statute because the statute only contains one category of crime. As a result, a court may not vary from the categorical approach in assessing ACCA eligibility. Instead, *Chambers* makes clear that we must apply the categorical approach to South Carolina's blue light statute.

## C.

Because we find that the South Carolina blue light statute only proscribes one behavior and does not contain separate categories of crimes, we must now apply the categorical approach described in *Begay* to determine whether or not the South Carolina blue light statute as a whole is a predicate offense under the ACCA. In doing so, we are mindful of the Supreme Court's direction that "it is the generic sense of the word . . . that counts" in applying the categorical approach and that we must "refer to a crime as generally committed." *Chambers*, 129 S. Ct. at 690; *see also Begay*, 128 S. Ct. at 1584 ("[W]e examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion."). As a result, we must decide what the South Carolina statute criminalizes. Much like the New Mexico statute at issue in *Begay*, the blue light statute does not contain the requisite intent to bring it within the scope of crimes that fall under the ACCA. In fact, the South Carolina statute explicitly criminalizes a broad swath of unintentional conduct. *Roseboro*, 551 F.3d at 235. Because it is "a strict liability crime, [it] differs from a prior record of violent and aggressive crimes committed intentionally such as arson, burglary, extortion, or crimes involving the use of explosives." *Begay*, 128 S. Ct. at 1588. Therefore, South Carolina's blue light law, when viewed categorically, falls outside the scope of a "violent felony" as defined by § 924(e)(2)(B)(ii).[5]

---

[5]As the panel in *Roseboro* noted, "[l]aws from over forty states require that the failure to stop for a blue light violation be purposeful." *Roseboro*, 551 F.3d at 236 n.5 (offering a comprehensive look at state laws which require knowledge for a blue light violation). Because those statutes are not before us, we express no opinion on whether they qualify as prior offenses under the ACCA.

## IV.

In light of the reasoning above, we conclude that a violation of South Carolina's blue light statute, S.C. Code Ann. § 56-5-750(A), does not qualify as a predicate offense for purposes of the ACCA. We therefore vacate the judgment of the district court and remand the case for resentencing in light of this opinion.

*VACATED AND REMANDED*