PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

TRINO MEDINA-CAMPO,

*Defendant-Appellant.*

No. 12-4402

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Ellen L. Hollander, District Judge.
(1:11-cr-00465-ELH-1)

Argued: March 19, 2013

Decided: April 18, 2013

Before MOTZ, KING, and AGEE, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Motz and Judge Agee joined.

## COUNSEL

**ARGUED:** Paresh S. Patel, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant. Roger Kristian Picker, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, Baltimore,

Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

---

**OPINION**

KING, Circuit Judge:

Having been deported to Mexico in 2005 following his conviction of an aggravated felony, Trino Medina-Campo returned to the United States and remained undetected for several years, until he was arrested in Anne Arundel County, Maryland, on April 1, 2011, for driving under the influence. The federal authorities were alerted, and a grand jury in the District of Maryland charged Medina-Campo with a single count of illegal entry after deportation, in contravention of 8 U.S.C. § 1326(a); *see also* § 1326(b)(2) (increasing maximum two-year term of imprisonment for ordinary violators to twenty years for aliens "whose removal was subsequent to a conviction for commission of an aggravated felony"). Medina-Campo pleaded guilty, and, on April 16, 2012, he was sentenced by the district court to fifty months in prison. On appeal, Medina-Campo challenges the court's calculation of his prison term insofar as it was informed by the federal Sentencing Guidelines. Discerning no error, we affirm.

I.

The applicable guideline is section 2L1.2, titled "Unlawfully Entering or Remaining in the United States," which designates a base offense level of 8. The guideline provides for a sixteen-level enhancement, however, if, as a specific characteristic of the offense, the defendant unlawfully reentered the United States following "a conviction for a felony that is . . . a drug trafficking offense for which the sentence imposed exceeded 13 months." U.S. Sentencing Guidelines ("USSG") § 2L1.2(b)(1)(A) (2011). In 2001, an Oregon circuit court

entered a judgment of conviction against Medina-Campo on his guilty plea to five counts of a nine-count indictment, the most serious charge being unlawful delivery of a Schedule I controlled substance, i.e., heroin. *See* Or. Rev. Stat. § 475.992(1)(a) (2001).[1] Medina-Campo was sentenced to prison for twenty-four months on the heroin offense, and to lesser concurrent terms of imprisonment on the rest.

Taking into account the Oregon drug conviction, the district court, over an objection from the defense, enhanced the offense level for the illegal-entry conviction to 24 from the base of 8. The court then subtracted three levels in adjustment, having found, in agreement with the government, that Medina-Campo had accepted responsibility as to the federal offense. *See* USSG § 3E1.1(b). The final adjusted offense level of 21, viewed in conjunction with his inclusion within criminal history category IV, resulted in an advisory Guidelines range for Medina-Campo of 57 to 71 months of imprisonment. From the lower end of the calculated range, the court varied downward to impose the fifty-month sentence appealed from. *See* 18 U.S.C. § 3553(a).

Medina-Campo pursues on appeal the same contention he advanced below, that is, the Oregon felony of unlawful delivery of a controlled substance does not qualify under the Guidelines as a "drug trafficking offense" meriting the sixteen-level enhancement. Discounting the trafficking enhancement, the applicable offense level is 10, reflecting a less severe four-level enhancement for the Oregon felony, *see* USSG § 2L1.2(b)(1)(D), downwardly adjusted by two levels (instead of three) for acceptance of responsibility, *see id.* § 3E1.1(a). Using the calculation that Medina-Campo proposes, his advisory Guidelines range would be 15 to 21 months, and it is possible that, after his present sentence is

---

[1]Section 475.992 was renumbered to section 475.840 in 2005, then to section 475.752 in 2011.

vacated and the matter remanded, he would receive a commensurately more lenient term of imprisonment.

## II.

We will not disturb a district court's reasonable sentencing decisions, consistent with the proper exercise of its discretion. *See United States v. Lawing*, 703 F.3d 229, 241 (4th Cir. 2012) (citing *Gall v. United States*, 552 U.S. 38, 41 (2007)). A sentence is unreasonable in the procedural sense if the court flatly omits certain steps, or if it analyzes relevant considerations in a manner contrary to fact or law. A court may therefore commit reversible sentencing error by, for instance, "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall*, 552 U.S. at 51. With respect to a Guidelines range attacked on appeal as miscalculated, we review the court's legal conclusions de novo and its factual findings for clear error. *See United States v. Llamas*, 599 F.3d 381, 387 (4th Cir. 2010).

## III.

## A.

We begin with the proposition that "[c]ourts employ a categorical approach in determining whether a prior conviction will lead to a sentence enhancement under the Sentencing Guidelines." *United States v. Peterson*, 629 F.3d 432, 435 (4th Cir. 2011) (citing, inter alia, *Taylor v. United States*, 495 U.S. 575, 588 (1990)). Medina-Campo posits that the Oregon felony of unlawful delivery of a controlled substance is not categorically a "drug trafficking offense" within the meaning of section 2L1.2. This seemingly counterintuitive theorem finds germination in the Oregon case law recognizing that one can be convicted of delivery not only for the most mundane

physical transfer of possession, but also by merely soliciting drugs from a supplier (albeit unsuccessfully) for subsequent transfer.

The latter situation was illustrated in *State v. Sargent*, in which an Oregon appellate court held that

> if a person solicits another to engage in conduct constituting an element of the crime of delivery, e.g., to provide to the person a controlled substance for the purpose of distribution to third parties, the person has taken a substantial step toward committing the crime of attempted delivery . . . . Under [Oregon Revised Statutes § 475.922(1)(a)], the conduct constitutes delivery.

822 P.2d 726, 728 (Or. Ct. App. 1991). As related by the *Sargent* court, the solicitation "constitutes delivery" insofar as "an attempt to transfer a controlled substance is treated the same as a completed transfer." *Id.*[2] Furthermore, "[a]n attempt becomes a crime when the defendant takes a substantial step toward commission of the crime." *Id.* (citation and internal quotation marks omitted). In essence then, in Oregon, the solicitation of controlled substances in order to resell them — regardless of the success of the endeavor — amounts to an attempted attempt at delivery, which is the same as attempted delivery, which is the same as actual delivery.

Seizing upon the remoteness in time of the threshold act of soliciting delivery from the climactic act of actual delivery via physical transfer, Medina-Campo maintains that the Oregon delivery statute, having been interpreted inclusively by the courts of the state, "'prohibits different types of behavior such

---

[2]Delivery is defined by Oregon law as "the actual, constructive or *attempted transfer*, other than by administering or dispensing, from one person to another of a controlled substance, whether or not there is an agency relationship." Or. Rev. Stat. § 475.005(8) (emphasis added).

that it can be construed to enumerate separate crimes.'" *United States v. Gomez*, 690 F.3d 194, 198 (4th Cir. 2012) (quoting *United States v. Rivers*, 595 F.3d 558, 562-63 (4th Cir. 2010)). And if soliciting delivery is, under *Gomez* and *Rivers*, a separate crime from attempted or actual delivery, *Peterson*'s categorical approach must give way to the modified categorical approach, which applies only to that relatively small subset of cases "involving statutes encapsulating separate proscriptions, at least one of which constitutes," for our purposes, a drug trafficking offense. *Gomez*, 690 F.3d at 198; *see United States v. Maroquin-Bran*, 587 F.3d 214, 218 (4th Cir. 2009).

Medina-Campo asserts that he prevails under the modified categorical approach, which circumscribes our review "'only to the fact of conviction and the statutory definition of the prior offense,'" *Gomez*, 690 F.3d at 198 (quoting *Shepard v. United States*, 544 U.S. 13, 17 (2005) (citation omitted)), and confines the proper proof thereof to "a limited universe of documents relevant to the underlying conviction," *id.* (citing *Shepard*, 544 U.S. at 26). According to Medina-Campo, the *Shepard* documents produced by the government in his case — the Oregon indictment, together with the petition and order evidencing his guilty plea to the delivery charge — are insufficiently detailed to permit a court to determine whether he was convicted for the initial act of soliciting delivery or for undertaking a subsequent step in the process. Thus, says Medina-Campo, the government is unable to prove it more likely than not that the sixteen-level upward modification should be figured into his sentencing calculus. *See United States v. Washington*, 629 F.3d 403, 409-10 (4th Cir. 2011) (concluding that, in cases employing modified categorical approach, government bears burden of proof by preponderance of evidence).

### B.

### 1.

Medina-Campo's carefully crafted argument goes nowhere, of course, if its premise is shown unsound, i.e., if soliciting delivery of a controlled substance is not, for purposes of section 2L1.2, a separate crime from attempting or effectuating delivery, such that the modified categorical approach may be employed. *See United States v. Vann*, 660 F.3d 771, 782 (4th Cir. 2011) (en banc) (King, J., concurring) (instructing that "[t]he categorical approach, when it applies[,] . . . is mandatory and dispositive," and, thus, "where 'the statute only contains one category of crime . . . a court may not vary from the categorical approach'" (third alteration in original) (quoting *Rivers*, 595 F.3d at 564)).

In analyzing whether the Oregon delivery statute is divisible for federal sentencing purposes, we first construe the pertinent portions of the Guidelines, using standard canons of statutory interpretation. *See Peterson*, 629 F.3d at 434 ("Because resolution of the issue involves interpretation of the Sentencing Guidelines, we begin with the text."). If a suitable answer cannot be divined from the language of the Guidelines, we will look to the general criminal law of the several states to ascertain how the nation's courts have commonly regarded the interplay between solicitation and other drug offenses more readily understood to be within the trafficking rubric. *See id.* at 436 (observing that, in employing the categorical approach, courts "must distill a 'generic' definition of the predicate offense based on how the offense is defined 'in the criminal codes of most states'" (quoting *Taylor*, 495 U.S. at 598)).[3] In so doing, we recognize that Oregon's merger of the various offenses may be atypical, and, consequently, in no way determinative of our inquiry.

---

[3]In *Peterson*, following the Supreme Court's lead in *Taylor* whereby it arrived at a definition of generic burglary, we resorted to the Model Penal Code to generically define the crime of manslaughter.

2.

Medina-Campo points out that, for purposes of the sixteen-level enhancement authorized by section 2L1.2(b)(1), Application Note 1 to the guideline defines a drug trafficking offense as one "that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." USSG § 2L1.2 cmt. n.1(B)(iv). In augmentation of the acts of perpetration outlined in Application Note 1, the reach of subsection (b)(1) extends outward through Application Note 5 to certain related acts, which "include the offenses of aiding and abetting, [together with] conspiring . . . and attempting . . . to commit such offenses." *Id.* § 2L1.2 cmt. n.5.[4]

Though "solicitation" does appear elsewhere in the Guidelines with some frequency, and occasionally alongside "conspiracy" and "attempt," the term is not mentioned in Application Note 5.[5] Medina-Campo characterizes this omission as a deliberate act on the part of the Sentencing Commission, highlighting the efforts in the Model Penal Code (the "MPC") to distinguish solicitation from more proximate offenses, such as attempt. The MPC provides that a person is

---

[4]We consider the commentary and policy statements set forth in the Guidelines to be authoritative and entitled to controlling weight to the extent that they are not inconsistent with an applicable statute or the Guidelines themselves. *See United States v. Brack*, 651 F.3d 388, 392 n.2 (4th Cir. 2011).

[5]For instance, USSG § 2X1.1 governs the default treatment of conspiracies, attempts, and solicitations where convictions therefor are not otherwise addressed by a specific offense guideline. Another provision, relating to sentencing factors triggered by a defendant's conviction of an identified statutory offense, generally authorizes the application of those factors and, in particular, "the determination of the offense level where the defendant was convicted of conspiracy, attempt, solicitation, aiding or abetting, accessory after the fact, or misprision of felony in respect to that particular statute." USSG § 1B1.3 cmt. n.6.

guilty of soliciting the commission of a crime if, inter alia, "with the purpose of promoting or facilitating its commission he commands, encourages or requests another person to engage in specific conduct that would constitute such crime or an attempt to commit such crime." MPC § 5.02(1) (Proposed Official Draft 1962). The provision differentiates between "command[ing], encourag[ing,] or request[ing]" someone to commit a particular offense, any one of which delineates the crime of solicitation, from the underlying offense itself or an attempt to commit it. The MPC commentary cements the point:

> Whether the solicitation to commit a crime constitutes an attempt by the solicitor is a question that has been answered in several ways . . . . Although there has been considerable conflict, even among the decisions of the same jurisdiction, the trend has seemed to be . . . against classifying solicitations as attempts and toward treating them as distinct offenses.

MPC and Commentaries, pt. I, § 5.02, cmt. (2) (1985).

Notwithstanding that Application Note 5 to Guidelines section 2L1.2 overtly includes within the trafficking enhancement only the additional offenses of aiding and abetting, conspiracy, and attempt, it is not the case that every other offense related to trafficking is necessarily excluded. *See* USSG § 1B1.1 cmt. n.2 (explaining that, with respect to its appearance throughout the Guidelines, "[t]he term 'includes' is not exhaustive"). Medina-Campo acknowledges this general rule of construction, but he urges that we apply a variation of the canon of *ejusdem generis* to demonstrate that, in drafting Application Note 5, the Commission purposefully intended to exclude solicitation.

*Ejusdem generis*, as a tool of statutory construction, instructs that "where general words follow an enumeration of persons or things, by words of a particular and specific mean-

ing, such general words are . . . to be held as applying only to persons or things of the same general kind or class as those specifically mentioned." *Black's Law Dictionary* 517 (6th ed. 1990). For example, in the contractual context, "if a lease forbade the tenant to keep *kerosene, camphene, burning fluid, or any other illuminating material*, the general language at the end would not include a light bulb, though it is indisputably an 'illuminating material.'" Bryan A. Garner, *A Dictionary of Modern Legal Usage* 308 (2d ed. 1995).

Application Note 5 recites, in its entirety, that "[p]rior convictions of offenses counted under subsection (b)(1) include the offenses of aiding and abetting, conspiring, and attempting, to commit such offenses." USSG § 2L1.2 cmt. n.5. There is no trailing general language analogous to that in our example ("any other illuminating material") describing the group of three enumerated offenses, but, Medina-Campo insists, if solicitation were added as a fourth, it would be manifest that one of these things (solicitation) is not like the others.

The problem with Medina-Campo's argument is that none of these things is very much like the others, and that, we daresay, is precisely why there is no general language in the application note categorizing them. Two persons may conspire to traffic in drugs, but it is sufficient that either of them commit the overt act necessary to render his confederate criminally culpable for the unlawful agreement. That overt act, perhaps, falls short of the substantial step constituting a full-blown attempt to traffic. Or, when supplemented with other acts, a completed trafficking offense may result, possibly inculpating the perpetrator's bodyguard for aiding and abetting.

All of these myriad theories of criminal liability, though conceptually quite distinct, are nonetheless integral to the trafficking process, as is solicitation — an act that often assists in identifying the market for the illegally trafficked substances, and which may well prove the catalyst for a subsequent conspiracy, attempt, or aiding and abetting. These drug

offenses are therefore not "separate crimes" for federal sentencing purposes, but are instead simply different ways to commit the broad, unitary offense of drug trafficking described in the Guidelines. Given the absence of separate crimes delineated within section 475.992(1)(a) of the Oregon Revised Statutes, the modified categorical approach is inapposite.

## C.

Using the categorical approach, then, we are constrained to conclude that the Oregon felony of unlawful delivery of a controlled substance, even if the defendant engaged only in solicitation, is a drug trafficking offense for the purpose of applying the sixteen-level enhancement described in section 2L1.2(b)(1)(A). Because the result in this case is dictated by the language of the Guidelines, we do not delve into defining the generic offense of delivery by resort to the MPC, an analysis of the predominate mode among the various states, or otherwise. Such extrinsic methodology is unnecessary here to properly interpret the relevant sentencing provision.

## 1.

Three of our sister circuits, confronting closely analogous circumstances, have arrived at the identical result. In *United States v. Shumate*, 329 F.3d 1026 (9th Cir. 2003), a federal marijuana prosecution, the defendant had been convicted of delivery of marijuana under the same Oregon statute being scrutinized here. The Ninth Circuit was asked to consider the possibility that the conviction was the result of solicitation, and, in that event, whether it would qualify as a "controlled substance offense." *See* USSG § 4B1.1(a) (explaining the prerequisites for career offender status, one of which is "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense"). The court of appeals resolved the question in the affirmative, notwithstanding that the Guidelines defined "controlled sub-

stance offense" to specifically "include" only "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." *See id.* § 4B1.2 cmt. n.1. In so doing, the Ninth Circuit expressed its view that, "beyond the actual fulfillment of the elements of the crime," the application notes to section 4B1.1(a) provide that conviction of the additional specified offenses are likewise controlled substance offenses, "and that the failure to mention solicitation has no 'legal significance.'" *Shumate*, 329 F.3d at 1031 (quoting *United States v. Cox*, 74 F.3d 189, 190 (9th Cir. 1996) (addressing same issue with respect to "crime of violence" prerequisite of section 4B1.1(a))).

Paralleling the construct of section 4B1.1(a), the "crime of violence" proviso also appears alongside that of "drug trafficking offense" in section 2L1.2(b)(1)(A), and both are subject to Application Note 5. In *United States v. Cornelio-Pena*, 435 F.3d 1279 (10th Cir. 2006), an unlawful entry proceeding under 8 U.S.C. § 1326(a), the defendant's prior Arizona conviction for solicitation to commit burglary was deemed a "crime of violence" for purposes of the sixteen-level enhancement. Upon reviewing the *mens rea* and *actus reus* components of conspiracy, attempt, and aiding and abetting, *see id.* at 1286-88, the Tenth Circuit concluded that those offenses "are merely illustrative, and solicitation is sufficiently similar to the listed offenses to be encompassed" within Application Note 5, *id.* at 1288.[6]

---

[6]For example, the *Cornelio-Pena* court observed that "both conspiracy and solicitation require only intent that the underlying offense be committed and a minimal act such as agreeing or soliciting." 435 F.3d at 1286. With respect to attempt vis à vis solicitation, the court opined that "in both instances, the defendant intends that the underlying crime be accomplished," and that "although the *actus reus* requirement for an attempt must go beyond mere preparation, it need not be a greater act than that required for solicitation." *Id.* at 1286-87. The court paused to recognize the "important distinctions" between solicitation and aiding and abetting, most notably that the latter "requires the actual commission of the underlying offense," which carries with it the side effect of transforming any solicitor into an accomplice. *Id.* at 1287. Nevertheless, the court brushed aside the perceived disconnection, reasoning that "[b]ecause solicitation is at least as similar to conspiracy as aiding and abetting is to conspiracy, solicitation should be included in the list." *Id.*

Persuaded by *Shumate* and *Cornelio-Pena*, the Fifth Circuit, in another unlawful entry prosecution, concluded that the defendant's earlier solicitation conviction in North Carolina — to-wit, solicitation to commit assault with a deadly weapon inflicting serious injury — is a crime of violence for purposes of the section 2L1.2(b)(1)(A) enhancement. *See United States v. Mendez-Casarez*, 624 F.3d 233 (5th Cir. 2010). The court of appeals adopted an approach similar to that of the Tenth Circuit in *Cornelio-Pena*, particularly comparing solicitation to conspiracy, after which it determined that "the acts of soliciting and agreeing are similar, and we do not find the distinctions drawn between the *actus reus* requirements of solicitation and conspiracy to be dispositive in making one offense more clearly serious than the other." *Mendez-Casarez*, 624 F.3d at 240. The court declined to engage in further analysis concerning the attempt and aiding and abetting offenses, declaring that "solicitation need only be similar to one of the listed offenses in [Application Note 5]." *Id.*[7]

---

[7]Just recently, in *United States v. Rodriguez*, the Fifth Circuit adopted a dictionary-derived "plain-meaning approach when determining the 'generic, contemporary meaning' of non-common-law offense categories enumerated in federal sentencing enhancements." No. 11-20881, 2013 WL 1092568 at *6 (5th Cir. Mar. 15, 2013) (en banc) (quoting *Taylor*, 495 U.S. at 598). The issue in *Rodriguez* was whether a prior Texas conviction for sexual assault of a child subjected the defendant, convicted in federal court of illegal entry, to the sixteen-level crime-of-violence enhancement provided in section 2L1.2(b)(1)(A)(ii). The en banc court affirmed application of the enhancement in the matter before it, but it disapproved of the methodology that had been relied on in other sentencing cases to derive the generic predicate offense. That methodology, dictating "that lower courts always look to the majority of state codes — as well as to other sources, including the Model Penal Code, federal law, and criminal law treatises," *id.* at *7, was used in *Mendez-Casarez* to determine the generic crimes of solicitation and conspiracy for purposes of comparison. *Rodriguez* thus arguably undermines the precedential weight accorded *Mendez-Casarez*. Nonetheless, having thoroughly examined the panel's analysis, we perceive no indication that the result in *Mendez-Casarez* would have been different had the *Rodriguez* approach been substituted.

2.

Standing alone to the contrary is the decision in *United States v. Dolt*, 27 F.3d 235 (6th Cir. 1994), in which the defendant, convicted of federal cocaine trafficking charges, was sentenced as a career offender under USSG § 4B1.1. The sentence was predicated in part on a prior Florida conviction for solicitation to traffic in cocaine, construed by the district court as a controlled substance offense. The Sixth Circuit analyzed the characteristics of the offenses identified in the application note, concluding that the offense of solicitation was not sufficiently analogous to be included within. The court thus vacated the defendant's sentence and remanded for resentencing.

Whether parallels can be drawn between elements or characteristics of the generic offense of solicitation and one or more of the offenses particularly identified in Application Note 5 of section 2L1.2 (or the indistinguishable provision in the application notes to section 4B1.2, relating to career offender status) is beside the point. The salient feature common to solicitation of a crime, conspiring or attempting to commit the crime, and aiding and abetting the crime's commission, is the underlying crime itself. Prefatory and participatory acts apart from the substantive crime, though doubtlessly subject to prosecution as independent offenses, may yet be so closely related as to be considered the same offense within the federal sentencing realm. That is the reality engendered by Application Note 5 and its analogous provisions, and there is no reason to believe that solicitation merits exclusion therefrom. *See Cornelio-Pena*, 435 F.3d at 1287-88 ("Solicitation seeks to induce the commission of a crime, and thus is the original, direct cause of the crime if it is subsequently committed.").[8]

---

[8]Finally, we reject outright Medina-Campo's contention that the supposed ambiguity of Application Note 5 inures to his benefit under the rule of lenity. *See Reno v. Koray*, 515 U.S. 50, 64-65 (1995) (instructing that

## IV.

Reviewing the question de novo, we conclude that the district court committed no legal error by its interpretation of USSG § 2L1.2. Instead, the court properly calculated the advisory Guidelines range by enhancing Medina-Campo's offense level, pursuant to section 2L1.2(b)(1)(A), in that he had been convicted of a drug trafficking felony in Oregon. The sentence imposed was therefore patently reasonable, and we affirm it.

*AFFIRMED*

---

"[a] statute is not ambiguous for purposes of lenity merely because there is a division of judicial authority over its proper construction. The rule of lenity applies only if, after seizing everything from which aid can be derived, we can make no more than a guess as to [the drafters' intent]"). Through our examination of the text of the Guidelines, relevant canons of statutory construction, and the pertinent authorities, we are satisfied that our interpretation of section 2L1.2 surpasses the minimum "guess" threshold.