**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-4468**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DENITA HILL,

Defendant – Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. George L. Russell, III, District Judge. (1:14-cr-00225-GLR-1)

Argued: October 28, 2016                    Decided: November 29, 2016

Before SHEDD, AGEE, and WYNN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED**: Joanna Beth Silver, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant. Tamera Lynn Fine, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Joshua Felsen, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Denita Hill of one count of wire fraud conspiracy and two counts of aggravated identity theft. Hill now appeals, arguing that the district court clearly erred in imposing a two-level enhancement for obstruction of justice. For the following reasons, we affirm.

## I.

Hill worked as an accountant with the City of Baltimore's Finance Department Bureau of Accounting and Payroll Services (BAPS). As relevant here, Hill's job entailed verifying the non-receipt of lost or stolen checks and completing paperwork for the reissuance of such checks. Hill become disgruntled with her employment and began creating a plan with her friend Robert Johnson. Hill told Johnson that she had found a way to steal money without anyone noticing—by reissuing checks that had already been cashed by their recipients. Hill said she could reissue the checks, sign them over to Johnson, and he could cash them. Hill also told Johnson that she could handle any investigation. The two agreed to Hill's plan and, on two separate occasions, Hill submitted and processed paperwork for duplicate checks for lump-sum retirement benefits that had already been cashed by their recipients. After the checks were issued by other BAPS employees, Hill gave them to Johnson, who cashed them.

2

Shortly thereafter, Joyce Lochridge, a fraud investigator for M&T Bank, became suspicious of the deposits and contacted Russell Connelly, an agent with the City of Baltimore's Office of the Inspector General. Conelley contacted a supervisor in the Finance Department to inquire about the paperwork supporting the checks. Conelley also tried unsuccessfully to contact the retirees directly.

Less than an hour after Conelley called the Finance Department, Hill (unsolicited) called Conelley to tell him that she had looked into the checks and that they were properly reissued. Hill told Conelley that she had spoken to the retirees and both told her they had received the checks and signed them over to Johnson. Conelley pressed Hill, asking why two unrelated retirees would both sign their checks over to Johnson, and Hill opined that the retirees might be trying to avoid a garnishment. Conelley spoke again with Lochridge, and Lochridge told him of a similar conversation that she had with Hill. Later that day, Conelley interviewed Hill. During that interview, Hill repeated her earlier explanation that she had investigated the checks and determined that there was no impropriety. She further claimed that she did not know Johnson.

After speaking with Hill, Conelley resumed his efforts to find the underlying paperwork supporting the reissuance of the checks. As part of this effort, he went to the BAPS office to

3

lead a search. During the search, Conelley determined that the paperwork supporting the two checks was not with the paperwork for other checks reissued on those days. In fact, although multiple employees aided Conelley in this search, the paperwork was never recovered. Several BAPS employees testified that they would never reissue a check without the corresponding paperwork. For example, Kevin Logan—who had reissued one of the checks cashed by Johnson—testified that he specifically remembered having supporting paperwork when he issued the check.

Based on the foregoing, a federal grand jury indicted Hill and Johnson on one count of wire fraud conspiracy, in violation of 18 U.S.C. § 1349, two counts of substantive wire fraud, in violation of 18 U.S.C. § 1343, and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A. Johnson pled guilty, but Hill proceeded to trial. A jury convicted Hill of wire fraud conspiracy and the two counts of aggravated identity theft but acquitted her of the substantive wire fraud counts.

Following trial, the probation office prepared a Pre-Sentence Report (PSR), recommending a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. The PSR noted that "[i]n addition to destroying evidence, Ms. Hill reportedly reached out to investigators after the investigation was under way and tried to derail the investigation. In addition, she lied to investigators during an interview." (J.A. 958).

4

At sentencing, Hill objected to the obstruction enhancement. She conceded that she intended to obstruct justice but argued that she failed to do so as defined by the Guidelines because the investigation uncovered that she was the perpetrator. In response to this argument, the district court noted that "even if the delay is for a day, I mean, that day bought her a day to potentially grind the evidence, grind the paperwork." (J.A. 987-88). The court also asked the Government to make its strongest case that Hill's conduct fell within the enhancement. The Government argued that the missing paperwork was material to its case because it kept them from being able to complete a paper trail back to Hill and likely led to Hill's acquittal on the substantive wire fraud count.

Following argument, the district court held that the evidence supported the enhancement. The court found that Hill's conduct obstructed justice in three ways. First, the court referred to Johnson's testimony that Hill "had a plan in place to be able to thwart the investigation." (J.A. 994). Second, the court found by a preponderance of the evidence that Hill destroyed the paperwork and then explained that the "missing documentation clearly was material and . . . hindered the investigation." (J.A. 994). Finally, the court noted that Hill made "material misrepresentations" to Agent Conelley that "obstructed the investigation in this case, and hindered it"

because the misrepresentations bought her additional time to destroy the paperwork and cover her tracks. (J.A. 994).

With the obstruction enhancement, the district court found that Hill's offense level was 19 and her Guidelines range was 30-37 months. The court then varied downward four levels and sentenced Hill to 18 months imprisonment on the wire fraud count. The court also sentenced Hill to an additional 24 months imprisonment on the aggravated identity theft counts, consecutive to the 18-month sentence for wire fraud conspiracy, for a total sentence of 42 months imprisonment. Hill timely appealed.

II.

On appeal, Hill challenges only the two-level enhancement for obstruction of justice. We review the district court's legal interpretations of the Guidelines de novo and its factual findings for clear error. United States v. Medina-Campo, 714 F.3d 232, 234 (4th Cir. 2013). When, as here, a district court offers several independent bases for the obstruction enhancement, we need only uphold one in order to affirm. United States v. Ashers, 968 F.2d 411, 414 (4th Cir. 1992) (holding that "if the enhancement was applied properly on an alternative basis, the resulting adjusted offense level is correctly determined").

The enhancement for obstruction of justice, U.S.S.G. § 3C1.1, provides:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction . . . increase the offense level by 2 levels.

Application Note 4(G) states that "providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense" warrants the enhancement. U.S.S.G. § 3C1.1, app. note 4(G).

We hold that the district court did not clearly err in finding that Hill provided materially false statements to a law enforcement officer.* To begin, the statements Hill made to Conelley during her phone call and later interview were both material and false. A statement is material under § 3C1.1 when "if believed," the statement "would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, app. note 6. Hill's statements, in which she offered a false explanation for the need to reissue the checks and explained why the recipients

---

* On appeal, Hill argues for the first time that Conelley is not a "law enforcement officer" for purposes of the enhancement. The district court did not plainly err in finding otherwise; Agent Conelley served as the lead agent in Hill's prosecution and worked for the city agency responsible for investigating fraud by city employees.

would turn the checks over to Johnson clearly meet the "conspicuously low" bar for materiality. United States v. Gormley, 201 F.3d 290, 294 (4th Cir. 2000) (internal quotation marks omitted). Likewise, the district court did not err in finding that the statements significantly obstructed the investigation because, as the court explained, they bought Hill time to destroy the underlying paperwork and cover her tracks. That the jury acquitted Hill of the wire fraud charges is further support for the court's conclusion that Hill's statements significantly impeded the investigation and prosecution. Moreover, the fact that Hill was ultimately unsuccessful in her attempts to divert the investigation does not let her escape the enhancement. See United States v. Hicks, 948 F.2d 877, 884-85 (4th Cir. 1991) (applying enhancement for obstruction when defendant threw cocaine out of his car during a high speed chase but, after arrest, helped officers recover the evidence).

III.

Because the district court did not clearly err in finding that Hill made materially false statements to Conelley that significantly impeded the investigation and prosecution, we find that the court correctly imposed the two-level enhancement for

8

obstruction of justice. We accordingly affirm Hill's conviction and sentence.

AFFIRMED