# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 15, 2010

No. 09-40825

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JOSE MIGUEL MENDEZ-CASAREZ,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before DENNIS, OWEN, and SOUTHWICK, Circuit Judges.

DENNIS, Circuit Judge:

Defendant Jose Miguel Mendez-Casarez pleaded guilty to one count of illegal reentry in violation of 8 U.S.C. § 1326(a).  The district court sentenced him to 41 months of imprisonment and two years of supervised release.  Mendez-Casarez appeals his sentence, contending that the district court erred in determining that a prior conviction for solicitation to commit assault was a crime of violence for the purposes of U.S.S.G. § 2L1.2(b)(1)(A)(ii) and accordingly imposing a sixteen-level sentence enhancement.  We disagree, and affirm the district court's judgment.

No. 09-40825

## I. BACKGROUND

Mendez-Casarez was convicted in 2000 of solicitation to commit assault with a deadly weapon inflicting serious injury under North Carolina law. He was deported in 2006. On November 14, 2008, Mendez-Casarez pleaded guilty to one count of being unlawfully present in the United States after deportation in violation of 8 U.S.C. § 1326(a) and (b). The presentence report (PSR) calculated a base offense level of eight, to which it applied a sixteen-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii) based on Mendez-Casarez's 2000 North Carolina conviction for solicitation to commit assault with a deadly weapon inflicting serious injury. The PSR applied a two-level adjustment for acceptance of responsibility, producing a total offense level of twenty-two. His total offense level, in combination with a Criminal History Category of III, yielded a Guidelines range of 51-63 months.

Mendez-Casarez submitted objections to the PSR, including an objection to the sixteen-level enhancement. The district court overruled the objection and imposed the enhancement. The district court granted Mendez-Casarez an additional one-level reduction for acceptance of responsibility, on the Government's motion, and found that his offense level was twenty-one, yielding a Guidelines range of 46-57 months. The district court also found that Category III over-represented Mendez-Casarez's criminal history and departed downward to the range corresponding to an offense level of twenty-one and a Criminal History Category of II. The district court sentenced Mendez-Casarez to a within-Guidelines sentence, using the new range, of 41 months. Mendez-Casarez timely appealed.

## II. STANDARD OF REVIEW

"We review the district court's interpretation and application of the Sentencing Guidelines *de novo*, and its factual determinations for clear error." *United States v. Jimenez*, 509 F.3d 682, 693 (5th Cir. 2007). When sentencing

2

a defendant, the district court "must first calculate the Guidelines range and consider the appropriateness of a sentence within that sentencing range to fulfill its duty to consider the Sentencing Guidelines as advisory and as a frame of reference." *United States v. Tzep-Mejia*, 461 F.3d 522, 525 (5th Cir. 2006).   The question of whether a state conviction qualifies as a crime of violence for the purposes of the sixteen-level enhancement is a legal question to be reviewed *de novo*.  *United States v. Calderon-Pena*, 383 F.3d 254, 256 (5th Cir. 2004) (en banc).

### III.  DISCUSSION

Section 2L1.2 of the Sentencing Guidelines calls for a sixteen-level enhancement to a defendant's offense level if the defendant was previously deported or unlawfully remained in the United States after a conviction for a felony that is a "crime of violence."  U.S.S.G. § 2L1.2(b)(1)(A)(ii).  The Guidelines commentary defines "crime of violence" for the purpose of this enhancement as any of a list of offenses, which include murder, kidnapping, robbery, and aggravated assault.  U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).  The Guidelines commentary also explains that prior convictions for this purpose "include the offenses of aiding and abetting, conspiring, and attempting, to commit such [violent] offenses."  U.S.S.G. § 2L1.2 cmt. n.5.  The parties do not dispute whether the underlying substantive offense of assault with a deadly weapon inflicting serious injury constitutes a crime of violence.  Rather, the question in this case is whether *solicitation* to commit assault with a deadly weapon inflicting serious injury constitutes a crime of violence similar to the way that conspiring, attempting, or aiding and abetting in the commission of assault with a deadly weapon inflicting serious injury does.[1]  We previously

---

[1]  Our inquiry here is distinct from that undertaken to determine whether a prior conviction constitutes a crime of violence under U.S.S.G. § 4B1.1(a).  *See generally Begay v. United States*, 553 U.S. 137 (2008).

No. 09-40825

noted but did not reach this question in *United States v. Sandoval-Ruiz*, 543 F.3d 733, 738 (5th Cir. 2008).

Three courts of appeals have differed in their treatment of solicitation convictions as predicate offenses for sentence enhancements. The Tenth Circuit held that an Arizona conviction for solicitation to commit burglary of a dwelling constituted a crime of violence for the purposes of U.S.S.G. § 2L1.2(b)(1)(A)(ii). *United States v. Cornelio-Pena*, 435 F.3d 1279, 1288 (10th Cir. 2006). Similarly, the Ninth Circuit held that an Oregon conviction for solicitation of delivery of cocaine constituted a controlled substance offense for the purposes of U.S.S.G. § 4B1.1(a), which includes "aiding and abetting, conspiring, and attempting" to commit such an offense, U.S.S.G. § 4B1.2 cmt. n.1. *United States v. Shumate*, 329 F.3d 1026, 1031 (9th Cir. 2003). In contrast, the Sixth Circuit held that a Florida conviction for solicitation to traffic in cocaine did not constitute a controlled substance offense for the purposes of U.S.S.G. § 4B1.1(a). *United States v. Dolt*, 27 F.3d 235, 240 (6th Cir. 1994).

Relatedly, the Second Circuit held that a New York conviction for criminal facilitation of the sale of cocaine did not constitute a controlled substance offense for the purposes of U.S.S.G. § 4B1.1(a). *United States v. Liranzo*, 944 F.2d 73, 79 (2d Cir. 1991). The result reached by the Second Circuit is not directly relevant for our purposes, because criminal facilitation is a different crime from solicitation. Nonetheless, we refer to *Liranzo* because the principles that the Second Circuit applied in determining whether U.S.S.G. § 4B1.1(a) encompassed criminal facilitation are consistent with those applied by the courts in *Cornelio-Pena*, *Shumate*, and *Dolt*, and which we apply here.

Our consideration of whether solicitation to commit assault under North Carolina law qualifies as a crime of violence proceeds in two parts. First,

because solicitation is not explicitly listed in U.S.S.G. § 2L1.2 cmt. n.5 as a crime of violence, we must determine whether that list is exhaustive. Second, if the list in U.S.S.G. § 2L1.2 cmt. n.5 is not exhaustive, the next question is whether it covers the crime of solicitation of assault with a deadly weapon inflicting serious injury. We conclude that the list in U.S.S.G. § 2L1.2 cmt. n.5 is not exhaustive, and can include offenses other than those enumerated. We also conclude that the list in U.S.S.G. § 2L1.2 cmt. n.5 covers solicitation of assault with a deadly weapon inflicting serious injury because solicitation is sufficiently similar to conspiracy, which is one of the enumerated offenses in the list.

A.

First, we conclude that the phrase in U.S.S.G. § 2L1.2 cmt. n.5 explaining that "[p]rior convictions of [violent] offenses . . . include the offenses of aiding and abetting, conspiring, and attempting, to commit such [violent] offenses" is not an exhaustive list. The commentary to the Guidelines' "General Application Principles" states that "the term 'includes' is not exhaustive." U.S.S.G. § 1B1.1 cmt. n.2. Given the Sentencing Commission's explicit statement, because the list in U.S.S.G. § 2L1.2 cmt. n.5 begins with the word "include," the offenses listed — aiding and abetting, conspiring, and attempting — must be interpreted as examples, rather than an exclusive list. *Cornelio-Pena*, 435 F.3d at 1284 (reasoning that the list in U.S.S.G. § 2L1.2 cmt. n.5 was not exhaustive because of the Guidelines commentary on the word "include"); *Shumate*, 329 F.3d at 1028 (holding that the word "include," which was explained by the Guidelines commentary to be non-exhaustive, rendered the omission of solicitation in U.S.S.G. § 4B1.2 cmt. n.1 legally insignificant). Even the courts of appeal that have not explicitly addressed the word "include" have nevertheless also concluded that the phrase "include the offenses of aiding and abetting, conspiring, and attempting" is not exhaustive.

No. 09-40825

*Dolt*, 27 F.3d at 239; *Liranzo*, 944 F.2d at 79.  Thus, the fact that solicitation is not included in the list of offenses in U.S.S.G. § 2L1.2 cmt. n.5 is not dispositive as to whether Mendez-Casarez's conviction of solicitation to commit assault with a deadly weapon constitutes a crime of violence.

B.

We next conclude that the list in U.S.S.G. § 2L1.2 cmt. n.5 encompasses Mendez-Casarez's prior conviction of solicitation to commit assault with a deadly weapon.  The courts of appeal that have addressed the question of whether to include a prior offense in a list where it is not enumerated agree that the relevant inquiry involves comparing the offense in the statute of prior conviction to the offenses enumerated in the list.  *See Cornelio-Pena*, 435 F.3d at 1286 (holding that solicitation is "sufficiently similar" to the listed offenses in U.S.S.G. § 2L1.2 cmt. n.5 to warrant inclusion); *Dolt*, 27 F.3d at 240 (holding that solicitation "is not sufficiently similar" to the listed offenses in U.S.S.G. § 4B1.2 cmt. n.1. to warrant inclusion ); *Liranzo*, 944 F.2d at 79 (holding that criminal facilitation is "unlike" the listed offenses in U.S.S.G. § 4B1.2 cmt. n.1. and thus should not be included).[2]   In particular, the analysis involves comparing the *mens rea* (mental state) and *actus reus* (action or conduct) of the prior offense to those of conspiracy, aiding and abetting, and attempt.  *Cornelio-Pena*, 435 F.3d at 1286-87; *Dolt*, 27 F.3d at 238-40; *Liranzo*, 944 F.2d at 79.

The purpose of comparing offenses is to avoid categorizing a prior offense as a predicate offense that qualifies a defendant for sentence

---

[2] The only case in which a court of appeal did not compare the offenses is *Shumate*, because the Ninth Circuit relied on a previous decision in order to hold that the word "include" was dispositive in determining whether the list in U.S.S.G. § 4B1.2 cmt. n.1 encompassed solicitation. *Shumate*, 329 F.3d at 1030-31 (citing *United States v. Cox*, 74 F.3d 189, 190 (9th Cir. 1996)).  Nonetheless, the Ninth Circuit's reasoning is not inconsistent with our comparison analysis.

No. 09-40825

enhancement when the prior offense is clearly less serious than the offenses enumerated as constituting the substantive offense. *See Cornelio-Pena*, 435 F.3d at 1286 (explaining that "[b]ecause conspiracy and solicitation have similar *mens rea* and *actus reus* requirements and are of similar severity, they are sufficiently similar to be included together in [U.S.S.G. § 2L1.2 cmt. n.5]"); *Dolt*, 27 F.3d at 238 (determining that "aiding and abetting is clearly a more serious crime" than solicitation and thus that the two could not be considered sufficiently similar for the purpose of determining whether the list in U.S.S.G. § 4B1.2 cmt. n.1. encompassed solicitation); *Liranzo*, 944 F.2d at 79 (holding that criminal facilitation is different from conspiracy, aiding and abetting, and attempt, because the latter three offenses all require intent to commit the underlying offense, whereas criminal facilitation requires a less serious *mens rea*). Thus, if the *mens rea* and *actus reus* of Mendez-Casarez's prior conviction are clearly less serious than those of conspiracy, aiding and abetting, and attempt, as defined by their generic contemporary meanings, then we would conclude that his prior conviction does not constitute a crime of violence. Conversely, if the *mens rea* and *actus reus* of Mendez-Casarez's prior conviction are not clearly less serious than those of one or more of the three other offenses, then we would conclude that his prior conviction does constitute a crime of violence for the purpose of U.S.S.G. § 2L1.2(b)(1)(A)(ii).

Mendez-Casarez was convicted of the North Carolina crime of solicitation to commit assault with a deadly weapon inflicting serious injury. Although the penalty for committing solicitation is outlined in state statutes, *see* N.C. Gen. Stat. § 14-2.6(a), the crime itself is defined only in common law:

> Soliciting another person to commit a felony is a crime in North Carolina. Counseling, enticing or inducing another to commit a crime is the gravamen of the crime of solicitation. Solicitation is complete when the request to commit a crime is made, regardless of whether the crime solicited is ever committed or attempted.

7

*State v. Richardson*, 395 S.E.2d 143, 147-48 (N.C. Ct. App. 1990).  In North Carolina, "to hold a defendant liable for the substantive crime of solicitation, the State must prove a request to perform every essential element of the [underlying] crime." *State v. Suggs*, 453 S.E. 2d 211, 215 (N.C. Ct. App. 1995). Thus, to convict a defendant of solicitation to commit assault with a deadly weapon inflicting serious injury, the state must prove to the jury beyond a reasonable doubt that the solicitor requested the use of a deadly weapon as well as infliction of serious injury in the commission of the assault. *Id.* at 216 (holding that evidence proving only that the defendant asked another person to inflict serious injury on the victim was insufficient to convict the defendant of solicitation to commit assault with a deadly weapon inflicting serious injury, because serious injury could be inflicted without a deadly weapon). This is the definition of Mendez-Casarez's prior conviction to which we refer.

The Sentencing Commission has not defined conspiracy, attempt, or aiding and abetting in its Guidelines or commentary.  Where the Guidelines do not define predicate offenses, sentencing courts should define them "according to [their] 'generic, contemporary meaning[s].'" *United States v. Dominguez-Ochoa*, 386 F.3d 639, 642-43 (5th Cir. 2004) (quoting *Taylor v. United States*, 495 U.S. 575, 598 (1990)).  The generic, contemporary meanings of offenses can be found as they are defined "in the criminal codes of most States," the Model Penal Code, and treatises such as Wayne R. LaFave & Austin W. Scott, *Substantive Criminal Law* (1986).[3]  *Taylor*, 495 U.S. at 598. Here, we use the generic, contemporary meaning of conspiracy for comparison with the definition of solicitation under North Carolina law.

Conspiracy is characterized by "an agreement between two or more people for the purposes of promoting or committing a crime." *Cornelio-Pena*,

---

[3] A new edition of *Substantive Criminal Law* has been printed since *Taylor* was decided: Wayne R. LaFave, *Substantive Criminal Law* (2d ed. 2003).

No. 09-40825

435 F.3d at 1285; *see also* Model Penal Code § 5.03(1). In many jurisdictions, the definition of conspiracy also includes an overt act. *Cornelio-Pena*, 435 F.3d at 1286; *Dolt*, 27 F.3d at 238; 2 Wayne R. LaFave, *Substantive Criminal Law* § 12.2(b)*,* at 271-72 (2d ed. 2003) (explaining that "most of the states now require [in their conspiracy statutes] that an overt act . . . be proven . . . ").

We conclude that the *mens rea* and *actus reus* of solicitation are not clearly less serious than those of conspiracy. First, both offenses require the same *mens rea*: the defendant must intend that the underlying crime be committed. *Cornelio-Pena*, 435 F.3d at 1286; *Suggs*, 453 S.E. 2d at 215.[4]

Second, as to the *actus reus*, both offenses involve the defendant taking a step, whether agreeing or soliciting, towards fulfilling his intention that the crime be committed. *Cornelio-Pena*, 435 F.3d at 1286. The acts of soliciting and agreeing "are of similar severity." *Id.* Indeed, the difference between the two acts is whether the *other* person agrees to commit the crime: a defendant whose solicitation happens to be declined has only solicited, whereas a defendant whose solicitation happens to be accepted has entered an agreement and become a conspirator. Given how closely related the two acts are, we do not think that the response of the other person determines the seriousness of the acts of soliciting or agreeing.[5]

---

[4] In contrast, other crimes, such as criminal facilitation and accessory after the fact, do not require that the defendant intend that the underlying crime be committed. *See Liranzo*, 944 F.2d at 79 (explaining that "unlike the crimes of aiding and abetting, conspiracy, or attempt, the crime of criminal facilitation does not involve the *intent* to commit the underlying substantive offense"); 2 LaFave, *supra*, § 13.6(a), at 400 (explaining that a defendant can only be an accessory after the fact *after* the underlying crime has already been committed).

[5] Accordingly, we find the Sixth Circuit's reasoning that solicitation is less serious than conspiracy because a solicitee could decline a solicitation, *Dolt*, 27 F.3d at 238-39, to be unpersuasive.

No. 09-40825

Nor does the overt act requirement included in many jurisdictions' conspiracy statutes change our assessment that the *actus reus* of solicitation is not clearly less serious than that of conspiracy. It is true that most jurisdictions require that in a conspiracy, there must be an agreement as well as an overt act undertaken by one of the conspirators. 2 LaFave, *supra*, § 12.2(b), at 271-72. Solicitation does not have an overt act requirement. *Dolt*, 27 F.3d at 239. However, this additional requirement does not elevate the level of seriousness of conspiracy, because "the [overt] act need not be criminal or unlawful in itself." 2 LaFave, *supra*, § 12.2(b), at 272.

> The function of the overt act in a conspiracy prosecution is simply to manifest 'that the conspiracy is at work,' . . . and is neither a project still resting solely in the minds of the conspirators nor a fully completed operation no longer in existence.

*Yates v. United States*, 354 U.S. 298, 334 (1957) (quoting *Carlson v. United States*, 187 F.2d 366, 370 (10th Cir. 1951)), *overruled on other grounds by Burks v. United States*, 437 U.S. 1 (1978); *see also* 2 LaFave, *supra*, § 12.2(b), at 273 (same). *See also Ianelli v. United States*, 420 U.S. 770, 786 n.17 (1977) (explaining that an overt act "can be innocent in nature, provided it furthers the purpose of the conspiracy").

In sum, the acts of soliciting and agreeing are similar, and we do not find the distinctions drawn between the *actus reus* requirements of solicitation and conspiracy to be dispositive in making one offense more clearly serious than the other. We therefore conclude that the *actus reus* of solicitation is not clearly less serious than that of conspiracy.

As solicitation need only be similar to one of the listed offenses in U.S.S.G. § 2L1.2 cmt. n.5, we need not compare solicitation to aiding and abetting or attempt in order to hold that U.S.S.G. § 2L1.2 cmt. n.5 encompasses Mendez-Casarez's prior conviction of solicitation to commit

assault with a deadly weapon inflicting serious injury. Thus, the district court correctly concluded that Mendez-Casarez's prior conviction constitutes a crime of violence for the purposes of U.S.S.G. § 2L1.2(b)(1)(A)(ii).

## C.

Mendez-Casarez argues that the rule of lenity should operate in his favor because there is a division of authority on the question of whether to categorize solicitation convictions as predicate offenses for the purpose of sentence enhancement.[6] However, a division between courts of appeal does not automatically render a Sentencing Guideline ambiguous. *Reno v. Koray*, 515 U.S. 50, 64-65 (1995) ("A statute is not ambiguous for purposes of lenity merely because there is a division of judicial authority over its proper construction. The rule of lenity applies only if, after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended." (citations and quotation marks omitted)). As the Supreme Court concluded in *Reno*, "That is not this case." *Id*. at 65. In the instant case, we have used the tools of interpretation available to us to discern the intent of the Sentencing Commission, and so the rule of lenity does not operate in Mendez-Casarez's favor.[7]

---

[6] *See United States v. Bustillos-Pena*, 612 F.3d 863, 868 (5th Cir. 2010) ("Although the provisions of the Sentencing Guidelines are not statutes, we apply the rule of lenity to them when we find that they are ambiguous.").

[7] Relatedly, Mendez-Casarez contends that interpreting the list in U.S.S.G. § 2L1.2 cmt. to be non- exhaustive would render it unconstitutionally vague, because a defendant could not know ahead of time what crimes would qualify him for sentence enhancement. We find his argument unpersuasive. In this case, any other offenses must be sufficiently similar to the listed offenses in order to be included under U.S.S.G. § 2L1.2 cmt. n.5. The list "is not so indefinite as to prevent an ordinary person from understanding what conduct" qualifies a defendant for sentence enhancement. *James v. United States*, 550 U.S. 192, 210 n.6 (2007) (holding that the Armed Career Criminal Act provision that categorizes any offense that "involves conduct that presents a serious potential risk of physical injury to another" as a "violent felony" is not unconstitutionally vague).

No. 09-40825

## IV. CONCLUSION

Because the district court did not err in applying a sixteen-level enhancement to Mendez-Casarez's sentence for his prior conviction of solicitation of assault with a deadly weapon inflicting serious injury, which it properly deemed a crime of violence under U.S.S.G. § 2L1.2 cmt. n.5, we AFFIRM Mendez-Casarez's sentence.