# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-40472

United States Court of Appeals
Fifth Circuit

**FILED**

July 8, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

ALVARO HIGINIO MEJIA-AGUILAR,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:12-CR-1611-1

Before BARKSDALE, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

Defendant–Appellant Alvaro Higinio Mejia-Aguilar was convicted of being unlawfully present in the United States after deportation in violation of 8 U.S.C. §§ 1326(a) and (b). The district court concluded that Mejia-Aguilar had been previously deported for a drug trafficking offense and applied a 16-level enhancement under United States Sentencing Guidelines Manual (U.S.S.G.) § 2L1.2(b)(1)(A)(i). Mejia-Aguilar was sentenced to 41 months in

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-40472

prison.  He argues that the district court erred in applying the enhancement and appeals his sentence.  We affirm.

**I**

Mejia-Aguilar was deported after a conviction for "[s]olicitation to possess a narcotic drug for sale" in violation of Arizona Revised Statutes §§ 13-1002, 13-3408, for which he was sentenced to two years in custody.  He was later found in the United States and pleaded guilty to illegal reentry in violation of 8 U.S.C. §§ 1326(a) and (b).  The Presentence Investigation Report (PSR) prepared by the Probation Office determined that Mejia-Aguilar had a base offense level of 8.  Because of his prior Arizona conviction, the Probation Office applied a 16-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(i) for a felony drug trafficking offense for which the sentence imposed exceeded 13 months.  Mejia-Aguilar received a 3-level reduction for acceptance of responsibility, resulting in a total offense level of 21 and an advisory Guidelines range of 41-51 months of imprisonment.

Mejia-Aguilar had filed objections to the enhancement applied in the PSR, which he renewed at sentencing.  The district court overruled Mejia-Aguilar's objections and sentenced him to 41 months in prison.  Mejia-Aguilar now appeals.

**II**

"This court reviews *de novo* a district court's conclusion that a prior conviction constitutes a drug trafficking offense."[1]  A "drug trafficking offense" under U.S.S.G. § 2L1.2(b)(1)(A)(i) is "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to

---

[1] *United States v. Henao-Melo,* 591 F.3d 798, 801 (5th Cir. 2009).

manufacture, import, export, distribute, or dispense."[2]   The commentary to § 2L1.2 further provides that "[p]rior convictions of offenses counted under subsection (b)(1) include the offenses of aiding and abetting, conspiring, and attempting, to commit such offenses."[3]   Accordingly, aiding and abetting, conspiring, and attempting to commit a drug trafficking offense, for which a sentence exceeding 13 months is imposed, would result in a 16-level enhancement.  The question is whether solicitation of a drug trafficking offense comes within the commentary to § 2L1.2.

The answer to that question is largely resolved by this court's prior precedent.  We have previously held that "aiding and abetting, conspiring, and attempting[] to commit [any of the enumerated offenses]" is not an exclusive list of offenses.[4]  Our reasoning was that "[t]he commentary to the Guidelines' 'General Application Principles' states that 'the term "includes" is not exhaustive.'"[5]  We said, "because the list in U.S.S.G. § 2L1.2 cmt. n. 5 begins with the word 'include,' the offenses listed—aiding and abetting, conspiring, and attempting—must be interpreted as examples, rather than an exclusive list."[6]

We have further held that a solicitation offense was within the scope of the commentary to § 2L1.2 regarding aiding and abetting, conspiring, and

---

[2] U.S.S.G. § 2L1.2 cmt. n.1(B)(iv).

[3] *Id*. § 2L1.2 cmt. n.5.

[4] *See United States v. Mendez-Casarez*, 624 F.3d 233, 237-38 (5th Cir. 2010) ("[W]e conclude that the phrase in U.S.S.G. § 2L1.2 cmt. n. 5 explaining that [qualifying offenses include the inchoate offenses of aiding and abetting, conspiracy, and attempt] is not an exhaustive list . . . [and] the offenses listed—aiding and abetting, conspiring, and attempting—must be interpreted as examples, rather than an exclusive list."), *abrogated on other grounds by United States v. Rodriguez*, 711 F.3d 541 (5th Cir. 2013) (en banc).

[5] *Id*. at 237 (quoting U.S.S.G. § 1B1.1 cmt. n.2).

[6] *Id*. (collecting authorities that have reached the same conclusion).

attempting to commit the offenses enumerated in subsection (b)(1) of that Guideline provision. In *United States v. Mendez-Casarez,*[7] this court addressed whether the North Carolina crime of solicitation to commit assault with a deadly weapon inflicting serious injury constituted a crime of violence under the Sentencing Guidelines.[8]  Citing the reasoning of decisions from other circuit courts, we explained that "the analysis involves comparing the *mens rea* (mental state) and *actus reus* (action or conduct) of the prior offense to those of conspiracy, aiding and abetting, and attempt."[9]  "The purpose of comparing offenses," we said, "is to avoid categorizing a prior offense as a predicate offense that qualifies a defendant for sentence enhancement when the prior offense is clearly less serious than the offenses enumerated as constituting the substantive offense."[10]  We determined that solicitation under North Carolina law was not clearly less serious than conspiracy.[11]  We reasoned that "both offenses require the same *mens rea*: the defendant must intend that the underlying crime be committed."[12]  With respect to the *actus reus*, we noted that "both offenses involve the defendant taking a step, whether agreeing or soliciting, towards fulfilling his intention that the crime be committed."[13]  The "acts of soliciting and agreeing 'are of similar severity,'" we concluded.[14]

Mejia-Aguilar attempts to distinguish *Mendez-Casarez,* asserting that North Carolina's solicitation law requires proof of each element of the

---

[7] 624 F.3d 233 (5th Cir. 2010).

[8] *Mendez-Casarez*, 624 F.3d at 237-40.

[9] *Id*. at 238.

[10] *Id*.

[11] *Id*. at 239-40.

[12] *Id*. at 239.

[13] *Id*. at 240.

[14] *Id*. (quoting *United States v. Cornelio-Pena*, 435 F.3d 1279, 1286 (10th Cir. 2006)).

substantive crime, whereas Arizona treats solicitation separately from the underlying offense.  We are unpersuaded.  North Carolina law requires that the prosecution "prove *a request* to perform every essential element" of the underlying offense.[15]  The Arizona law similarly requires proof of intent and proof of conduct that would constitute a crime.  Arizona's solicitation statute defines the offense as:

> A person, other than a peace officer acting in his official capacity within the scope of his authority and in the line of duty, [who], with the intent to promote or facilitate the commission of a felony or misdemeanor, . . . commands, encourages, requests or solicits another person to engage in specific conduct which would constitute the felony or misdemeanor or which would establish the other's complicity in its commission.[16]

The *mens rea* and *actus reus* of the North Carolina and Arizona offenses of solicitation are not clearly less serious than the crime of conspiracy.  As noted above, the *mens rea* required by both Arizona's solicitation statute and the crime of conspiracy is that the defendant intend that the crime be committed.  Similarly, both require an *actus reus* that involves the defendant taking a step in furtherance of his intention that the crime be committed. Although Arizona's solicitation statute requires that the defendant command, encourage, request, or solicit another to commit a crime, while conspiracy requires an agreement between the defendant and another to commit the offense, we explained in *Mendez-Casarez* that "[t]he acts of soliciting and agreeing are of similar severity."[17]  We therefore conclude that the district court did not err in holding that a 16-level enhancement was appropriate as a

---

[15] *Id.* at 239 (emphasis added).

[16] ARIZ. REV. STAT. ANN. § 13-1002(A) (2014) (West).

[17] *Mendez-Casarez*, 624 F.3d at 240 (internal quotation marks omitted).

result of Mejia-Aguilar's prior conviction for solicitation to possess a narcotic drug for sale.

### III

We note that there is some question as to whether, and if so to what extent, our decision in *United States v. Mendez-Casarez* has survived in the wake of our court's en banc decision in *United States v. Rodriguez*.[18]   The Fourth Circuit has observed that *Rodriguez* "arguably undermines the precedential weight accorded *Mendez-Casarez*."[19]

Our en banc court expressly disapproved of *Mendez-Casarez* to the extent that it could be read as holding that courts should "look *always* to the majority of state codes—as well as the Model Penal Code, federal law, and criminal law treatises—when deriving the 'generic, contemporary meaning' of an undefined offense category in a federal sentencing enhancement."[20]   The continued vitality of our decision in *Mendez-Casarez* was otherwise unaffected by *Rodriguez*.

A question also arises as to whether the methodology set forth in *Rodriguez* applies in our analysis of solicitation offenses.  Because "solicitation" is not an enumerated offense in § 2L1.2, and in light of *Mendez-Casarez*'s construction of note 5 in the commentary to § 2L1.2, we conclude that we are to compare the seriousness of the solicitation offense of which Mejia-Aguilar was convicted to the seriousness of a conspiracy to possess a narcotic drug for sale.  That is the analysis that we conducted in section II above.  We need not treat "solicitation" as an offense enumerated in the commentary and engage in the *Rodriguez* analysis.

---

[18] 711 F.3d 541 (5th Cir. 2013) (en banc).

[19] *United States v. Medina-Campo*, 714 F.3d 232, 239 n.7 (4th Cir. 2013).

[20] *Rodriguez*, 711 F.3d at 555 (emphasis added).

But if we are mistaken, and we must employ the *Rodriguez* methodology, the outcome is the same. The en banc court in *Rodriguez* "adopt[ed] a plain-meaning approach when determining the 'generic, contemporary meaning' of non-common-law offense categories enumerated in federal sentencing enhancements."[21] The court set forth the steps that we are to take:

> Under this approach, our application of *Taylor*'s categorical approach to a prior state conviction proceeds in the following four steps: First, we identify the undefined offense category that triggers the federal sentencing enhancement. We then evaluate whether the meaning of that offense category is clear from the language of the enhancement at issue or its applicable commentary. If not, we proceed to step two, and determine whether that undefined offense category is an offense category defined at common law, or an offense category that is not defined at common law. Third, if the offense category is a non-common-law offense category, then we derive its "generic, contemporary meaning" from its common usage as stated in legal and other well-accepted dictionaries. Fourth, we look to the elements of the state statute of conviction and evaluate whether those elements comport with the generic meaning of the enumerated offense category.[22]

Mejia-Aguilar contends that *Rodriguez* "is inapplicable because solicitation was a crime at common law." This ignores the fact that the crime is not merely solicitation but solicitation to possess a narcotic drug for sale.[23] Nevertheless, we conclude that regardless of whether we consider "solicitation" or "solicitation to possess a narcotic drug for sale" to be common-law offenses

---

[21] *Id.* at 552.

[22] *Id.* at 552-53 (footnotes omitted).

[23] *Cf. United States v. Pascacio-Rodriguez*, 749 F.3d 353, 358-59 (5th Cir. 2014) (considering whether both the inchoate offense—conspiracy—*and* the underlying substantive crime—murder—were crimes at common law in determining whether *Rodriguez* applied).

or within "an undefined offense category," either path under the *Rodriguez* methodology leads to the same conclusion in the present case.

If we consider "solicitation" as the offense, rather than "solicitation to possess a narcotic drug for sale," and if "solicitation" is a common-law offense,[24] then "our precedent . . . looks to definitions in the variety of state codes, the Model Penal Code, federal law, and criminal law treatises to define the 'generic, contemporary meaning' of offense categories defined at common law."[25]  The generic, contemporary meaning of "solicitation" is congruent with the common-law definition, which is most simply described "as asking another person to commit an offense."[26]  "The gravamen of the offense of soliciting lies in counseling, enticing or inducing another to commit a crime."[27]  "It is an indictable offence at common law for one to counsel and solicit another to commit a felony or other aggravated offence, although the solicitation is of no effect, and the crime counselled is not in fact committed."[28]  Professor Wayne R. LaFave has noted with regard to current state formulations of the offense that "the acts of commanding or requesting another to engage in conduct which is criminal would seem of necessity to require an accompanying intent that such conduct occur, and there is nothing in the decided cases suggesting otherwise."[29]  We have little difficulty in concluding that Mejia-Aguilar's Arizona conviction was for generic "solicitation."

---

[24] *Rodriguez*, 711 F.3d at 558 (listing solicitation as a common-law offense).

[25] *Id.* at 552 n.17.

[26] 2 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 11.1 (2d ed. 2003).

[27] *State v. Furr*, 235 S.E.2d 193, 199 (N.C. 1977).

[28] *Commonwealth v. Flagg*, 135 Mass. 545, 549 (1883).

[29] 2 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 11.1 (2d ed. 2003) (footnotes omitted).

No. 13-40472

If "solicitation" or "solicitation to possess a narcotic for sale" are not common-law offenses, then "we derive its 'generic, contemporary meaning' from its common usage as stated in legal and other well-accepted dictionaries."[30]  Black's Law Dictionary defines "solicitation" in relevant part as: "1. The act or an instance of requesting or seeking to obtain something; a request or petition[.]  2. The criminal offense of urging, advising, commanding, or otherwise inciting another to commit a crime[.]"[31]  Webster's II New College Dictionary defines "solicit" in relevant part as: "1. To try to obtain by entreaty, persuasion, or formal application[.]  2. To petition persistently . . . .  3. To entice into evil or illegal action."[32]  Mejia-Aguilar's conviction for "command[ing], encourag[ing], request[ing] or solicit[ing] another person to engage in specific conduct which would constitute the felony or misdemeanor or which would establish the other's complicity in its commission"[33] comports with the generic, dictionary meaning of "solicitation."

## IV

Mejia-Aguilar argues that there is no documentation in the record to clarify the specific offense that was the basis of his conviction and that therefore we must consider only whether the least culpable act constituting a violation of Arizona's solicitation statute qualifies as a drug trafficking offense. Mejia-Aguilar does not specify which action prohibited by Arizona's solicitation statute is least culpable and less serious than the crimes of conspiracy, aiding and abetting, and attempt, but we need not determine which action is least culpable to conclude that this argument also fails.  Regardless of the action

---

[30] *Rodriguez*, 711 F.3d at 552.

[31] BLACK'S LAW DICTIONARY 1520 (9th ed. 2009).

[32] WEBSTER'S II NEW COLLEGE DICTIONARY 1075 (3d ed. 2005).

[33] ARIZ. REV. STAT. ANN. § 13-1002(A) (2014) (West).

No. 13-40472

Mejia-Aguilar took in violating the statute—commanding, encouraging, requesting, or soliciting—he took *some* step in furtherance of his intention that a crime be committed. Accordingly, considering only the least culpable act constituting a violation of Arizona's solicitation statute does not change our conclusion that a conviction under the statute qualifies as a drug trafficking offense under U.S.S.G. § 2L1.2(b)(1)(A)(i).

*        *        *

For the foregoing reasons, Mejia-Aguilar's sentence is AFFIRMED.