# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-41038
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

July 7, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ELMER GODOY-CASTANEDA,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
U.S.D.C. No. 7:13-CV-902

Before KING, JOLLY, and HAYNES, Circuit Judges.

PER CURIAM:*

Defendant Elmer Godoy-Castaneda pleaded guilty to being unlawfully present in the United States following deportation. Godoy-Castaneda appeals his sentence, arguing that the district court incorrectly concluded that his prior conviction in New York for conspiracy in the second degree and solicitation in the second degree relating to second-degree murder was a crime of violence under § 2L1.2(b)(1)(A)(ii) of the United States Sentencing Guidelines Manual ("U.S.S.G." or the "Guidelines"). We AFFIRM the district court's judgment.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-41038

I.

Godoy-Castaneda was charged with being unlawfully present in the United States after deportation in violation of 8 U.S.C. § 1326(a) and (b). Godoy-Castaneda pleaded guilty to the charge without a plea agreement.

The presentence report ("PSR") concluded that Godoy-Castaneda had a total offense level of 22 and a criminal history category of IV, applying a 16-level enhancement for a crime of violence pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii).  The enhancement was based upon Godoy-Castaneda's previous conviction in New York state for five counts of second-degree conspiracy and five counts of second-degree solicitation in connection with a second-degree murder.[1]  With an additional one-level reduction for acceptance of responsibility, the Guidelines range became 57 to 71 months.  Godoy-Castaneda objected to the 16-level crime of violence enhancement only on the following grounds:  (1) that solicitation is not listed in the application notes to § 2L1.2 and (2) that the definition of "conspiracy" under New York law does not fit within the generic, contemporary meaning of "conspiracy."

The district court overruled Godoy-Castaneda's objections and sentenced Godoy to 57 months.  Godoy-Castaneda timely appealed.

II.

Where a sentencing error is preserved, we review a district court's interpretation or application of the Guidelines de novo and its factual findings for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008) (citation omitted).  If the defendant fails to preserve an error, we review only for plain error. *United States v. Chavez-Hernandez*, 671 F.3d 494, 497 (5th Cir. 2012).  "Plain error review requires four determinations:  whether there was error at all; whether it was plain or obvious; whether the defendant

---

[1] Godoy-Castaneda pleaded guilty to all ten counts of the New York indictment.

has been substantially harmed by the error; and whether this court should exercise its discretion to correct the error in order to prevent a manifest miscarriage of justice." *Id.*

On appeal, Godoy-Castaneda argues for the first time that the district court erred in applying the 16-level enhancement because neither conspiracy in the second degree nor solicitation in the second degree under New York law qualifies as a crime of violence. Godoy-Castaneda further argues that the district court plainly erred in finding that the underlying offense, second-degree murder under New York law, qualifies as "murder" under § 2L1.2. Reviewing for plain error, we disagree.

Under the Guidelines, a defendant convicted of illegal reentry is subject to a 16-level sentencing enhancement if he was deported following a prior conviction for a crime of violence. *See* § 2L1.2(b)(1)(A)(ii). The Application Notes define a "crime of violence" in two ways: first, as one of several enumerated offenses, including murder and conspiracy, and, second, as "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." § 2L1.2, comment n.1(B)(iii). This court applies "slightly different methodologies to determine whether a prior conviction constitutes a crime of violence under each respective definition." *United States v. Herrera-Alvarez*, 753 F.3d 132, 137 (5th Cir. 2014). Both methodologies are "iterations of the elements-based categorical approach." *Id.* For the enumerated offenses, "we conduct a 'common-sense' categorical approach, looking to various sources— such as 'the Model Penal Code, the LaFave and Scott treatises, modern state codes, and dictionary definitions'—to define each crime by its 'generic, contemporary meaning.'" *Id.* (quoting *United States v. Moreno-Florean*, 542 F.3d 445, 449 (5th Cir. 2008)); *see also United States v. Rodriguez*, 711 F.3d 541, 552 n.17 (5th Cir.) (en banc), *cert. denied*, 134 S. Ct. 512 (2013). For the

second category, "we analyze whether the offense has as an element the use, attempted use, or threatened use of physical force." *Herrera-Alvarez*, 753 F.3d at 137. Under this provision, force "must rise to the level of 'destructive or violent force'; mere 'offensive touching' with a deadly weapon is insufficient." *Id.* (quoting *United States v. Dominguez*, 479 F.3d 345, 348 (5th Cir. 2007)). "Under both approaches, we determine the elements to which a defendant pleaded guilty by analyzing the statutory definition of the offense, not the defendant's underlying conduct." *Id.* at 137–38 (citing *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013)).

We first consider whether the underlying offense, second-degree murder, constitutes a crime of violence. *See United States v. Ellis*, 564 F.3d 370, 372 (5th Cir. 2009) (considering first whether the crime underlying defendant's "attempt" conviction would constitute a crime of violence). Murder is one of the enumerated offenses in comment 1(B)(iii) of U.S.S.G. § 2L1.2. We therefore consider whether New York's statute is consistent with the generic, contemporary meaning of murder. *See Rodriguez*, 711 F.3d at 549.

Under New York Penal Law § 125.25, a person is guilty of murder in the second degree, a Class A felony, when:

> 1. With intent to cause the death of another person, he causes the death of such person or of a third person . . . ; or
> . . .
> 3. . . . he commits or attempts to commit robbery, burglary, kidnapping, arson, rape in the first degree, criminal sexual act in the first degree, sexual abuse in the first degree, aggravated sexual abuse, escape in the first degree, or escape in the second degree, and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants . . . ;
> . . . .

N.Y. PENAL LAW § 125.25(1),(3).

No. 13-41038

Godoy-Castaneda contends that the third subsection of the statute is broader than the contemporary, generic meaning of murder. Though LaFave and the Model Penal Code recognize felony murder, Godoy-Castaneda argues that the third subsection does not necessarily involve conduct that is "dangerous to life." *See* 2 W.R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 14.5(b) (2d ed. 2003) (noting that for felony murder, the "felony attempted or committed by the defendant must be dangerous to life"). For example, under New York law, a person is guilty of sexual abuse in the first degree if he "subjects another person to sexual contact . . . [b]y forcible compulsion." N.Y. PENAL LAW § 130.65. Godoy-Castaneda contends that a person could be convicted of second-degree murder in New York for touching another person's leg, which is "sexual contact" by "forcible compulsion," and, when running away, that person knocks a third person down, causing that person's death. Godoy-Castaneda argues that this hypothetical is far from the dangerous felonies required by the Model Penal Code.

Godoy-Castaneda points to no New York case employing such a far-fetched approach. *See United States v. Teran-Salas*, 767 F.3d 453, 460 (5th Cir. 2014) (requiring a "realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime" (internal quotation marks and citations omitted)), *cert. denied*, 135 S. Ct. 1892 (2015). Even putting that aside and assuming *arguendo* that Godoy-Castaneda is correct that New York's second-degree murder statute is broader than the enumerated offense of murder, where a divisible statute has some sections that qualify as a crime of violence and some that do not, we apply the "modified categorical approach":

> Under the modified categorical approach, we may consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction. The court can then do what the categorical

approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime, or, as the case may be, assess whether the crime of conviction has as an element the use, attempted use, or threatened use of physical force. Those records are generally limited to . . . the charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.  By reviewing the extra-statutory materials approved in those cases, courts c[an] discover 'which statutory phrase' contained within a statute listing 'several different' crimes, 'covered a prior conviction.'

*Herrera-Alvarez*, 753 F.3d at 138 (internal citations and quotation marks omitted); *see also Shepard v. United States*, 544 U.S. 13, 16 (2005) (holding that, under the modified categorical approach, courts are "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented").

Godoy-Castaneda's indictment and judgment do not explicitly identify the statutory subsection for the underlying offense of second-degree murder. For the five conspiracy counts, the indictment states that Godoy-Castaneda acted "with intent that conduct constituting the crime of Murder in the Second degree . . . be performed [and] agreed with one or more persons to engage in or cause the performance of such conduct."  Similarly, with respect to the five solicitation counts, the indictment states that Godoy-Castaneda "did solicit, request, command, importune, or otherwise attempted to cause such person" to "engage in conduct constituting the crime of Murder in the Second Degree." However, in the description of the overt acts associated with the conspiracy, the indictment alleges that Godoy-Castaneda, with his co-conspirators, paid a third party to "fund the murders," met with the third party to identify the "intended murder target," and provided a photograph of the "intended murder

target." Godoy-Castaneda pleaded guilty to all of the counts of the indictment. The language in the indictment indicates that the underlying second-degree murder fell within the first subsection, as Godoy-Castaneda solicited a third party and conspired with others to cause the death of a person *with the intent to cause the death* of that person. *See* N.Y. PENAL LAW § 125.25(1). The first subsection of the second-degree murder statute is within the generic, contemporary meaning of murder.

Godoy-Castaneda did not object to the enhancement on this basis before the district court. Thus, we review this issue for plain error only. *Chavez-Hernandez*, 671 F.3d at 497. To demonstrate plain error, a defendant must show a forfeited error that is, inter alia, clear or obvious. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). In light of the record, which shows that the indictment to which he pleaded guilty alleges that Godoy-Castaneda, with others, identified the murder target and paid another person to carry out the murder, the implicit conclusion that § 125.25(1) is the statute of conviction and application of the enhancement on this basis is not clear or obvious error.

Next, we turn to the crimes of conviction. Godoy-Castaneda was convicted of conspiracy in the second degree and solicitation in the second degree for his role in the second-degree murder. It is not clear that Godoy-Castaneda preserved the arguments as to solicitation.[2] As we conclude that solicitation supports the "crime of violence" enhancement even under a less deferential review standard, we do not decide the standard of review and we

---

[2] In the district court, Godoy-Castaneda objected to the enhancement with respect to his solicitation conviction on the basis that solicitation was not an enumerated offense. He did not argue before the district court that solicitation is not a crime of violence because it follows a unilateral approach. However, he did make that argument with respect to the use of his conspiracy convictions. As the substance of the "unilateral" argument was before the district court, one could argue that the error was preserved. *See United States v. Rodriguez*, 523 F.3d 519, 522, 526 & n.1 (5th Cir. 2008) (applying ordinary standard of review where substance of the defendant's arguments was before the district court).

do not decide whether conspiracy in the second degree under New York law constitutes a crime of violence.

Under New York state law, "[a] person is guilty of criminal solicitation in the second degree when, with intent that another person engage in conduct constituting a class A felony, he solicits, requests, commands, importunes or otherwise attempts to cause such other person to engage in such conduct." N.Y. PENAL LAW § 100.10. Godoy-Castaneda contends that the crime of conspiracy under New York law does not constitute a "crime of violence" because New York's solicitation statute is similar to its conspiracy statute, and federal law does not recognize a unilateral conspiracy (such as conspiring with an undercover government agent).

We rejected this reasoning in *United States v. Mendez-Casarez*, 624 F.3d 233, 240 (5th Cir. 2010), *abrogated on other grounds by Rodriguez*, 711 F.3d 541.[3] In *Mendez-Casarez*, we considered whether a North Carolina solicitation statute could be a "crime of violence" even though solicitation is not one of the enumerated crimes. To this end, we compared "the *mens rea* (mental state) and *actus reus* (action or conduct) of the prior offense to those of conspiracy, aiding and abetting, and attempt" to determine whether the prior offense is "clearly less serious" than the enumerated offense. *Id.* at 238; *see also Mejia-Aguilar*, 575 F. App'x at 237 (applying the same methodology to determine whether solicitation under Arizona law is a crime of violence). Upon comparing

---

[3] *Rodriguez* only abrogated *Mendez-Casarez* "to the extent that it could be read as holding that courts should look *always* to the majority of state codes—as well as the Model Penal Code, federal law, and criminal treatises—when deriving the generic, contemporary meaning of an undefined offense category in a federal sentencing enhancement." *United States v. Mejia-Aguilar*, 575 F. App'x 233, 237 (5th Cir. 2014) (unpublished) (emphasis in original) (quotation marks and citations omitted). "The continued vitality of [*Mendez-Casarez*] was otherwise unaffected by *Rodriguez*." *Id.* Even if we employed the *Rodriguez* methodology, the outcome would be the same, as New York's solicitation statute is consistent with "the generic, dictionary meaning of 'solicitation.'" *Id.* at 238.

the North Carolina statute to the "generic, contemporary meaning" of conspiracy, we found that the "*mens rea* and *actus reus* of solicitation [under North Carolina law] are not clearly less serious than those of conspiracy." *Mendez-Casarez*, 624 F.3d at 239. First, North Carolina's solicitation statute required the same mens rea as conspiracy: "the defendant must intend that the underlying crime be committed." *Id.* Second, "both offenses involve the defendant taking a step, whether agreeing or soliciting, towards fulfilling his intention that the crime be committed." *Id.* at 240. Moreover, the fact that solicitation did not require an overt act, whereas conspiracy statutes often require an overt act, did not render solicitation "clearly less serious" than conspiracy. *Id.* In reaching the conclusion, we explicitly rejected the argument "that the response of the other person determines the seriousness of the acts of soliciting or agreeing." *Id.*

The New York statute here is similar to the North Carolina statute. Like the North Carolina law, the New York solicitation statute requires proof that the defendant intended that the underlying crime be committed (the mens rea) and that the defendant "solicits, requests, commands, importunes or otherwise attempts to cause [another] person to engage in such conduct" (the actus reus). N.Y. PENAL LAW § 100.10; *People v. Cheatham*, 239 A.D.2d 595, 596 (N.Y. App. Div. 1997). As we have previously found that it is the act of the *defendant*, and not the other person, that determines the seriousness of the act of soliciting, we reject Godoy-Castaneda's argument that solicitation cannot be a crime of violence because it is unilateral. We conclude that Godoy-Castaneda fails to show reversible error in the district court's conclusion that conviction for solicitation in the second degree based on the underlying crime of second-degree murder under New York law constitutes a crime of violence for the purposes of U.S.S.G. § 2L1.2(b)(1)(A)(ii).

AFFIRMED.